[TAGGED]

ORDERED in the Southern District of Florida on   OCT 25 2012



Erik P. Kimball, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                    Case No. 11-22133-PGH

JOSEPH JACKSON, SR.                                       Chapter 13
and ELIZABETH B. JACKSON,

    Debtors.
_____/

### ORDER (I) SUSTAINING TRUSTEE'S OBJECTION TO CLAIM NO. 4-2, (II) DENYING FIRST CHOICE CREDIT UNION'S MOTION TO ALLOW LATE CLAIM, AND (III) DENYING TRUSTEE'S MOTION TO DISMISS CASE

THIS MATTER came before the Court for hearing on October 11, 2012 upon the *Amended Trustee's Objection to Claim and Certificate of Service of Court Generated Notice of Hearing* [ECF No. 76] (the "Objection") filed by chapter 13 trustee Robin R. Weiner (the "Trustee") and the *Motion to Allow Claim No. 4-2 on Behalf of Creditor First Choice Credit Union* [ECF No. 84] (the "Motion") filed by First Choice Credit Union ("First Choice"). The Court also considered the Trustee's *ore tenus* motion to dismiss this case. For the reasons

stated more fully below, the Court will deny the Motion, sustain the Objection, strike First Choice's Claim No. 4-2, and deny the Trustee's motion to dismiss this case.

On May 3, 2011, Joseph Jackson, Sr. and Elizabeth B. Jackson (the "Debtors") commenced this case by filing a voluntary petition for relief under chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* First Choice was listed on the Debtors' initial creditor matrix. ECF No. 1, p. 8. Counsel for First Choice filed a notice of appearance in this case on May 10, 2011. ECF No. 8.

The Debtors' filed their schedules on May 17, 2011. ECF No. 9. First Choice is listed twice on Schedule D, Creditors Holding Secured Claims, in connection with a loan secured by a vehicle and in connection with a loan (the "Mortgage Loan") secured by a mortgage on a single family home located at 6160 S.E. Crooked Oak Avenue, Hobe Sound, Florida (the "Property"). The claim arising from the Mortgage Loan is the focus of the Motion and the Objection. Based on the Debtors' valuation of the Property, the Debtors' Schedule D indicates an unsecured deficiency claim of $214,713.00 on the Mortgage Loan. First Choice is not separately listed in the Debtors' Schedule F, Creditors Holding Unsecured Nonpriority Claims.

The Debtors filed their initial chapter 13 plan on May 17, 2011. ECF No. 13. That plan provided for no payments to secured creditors through the plan. With regard to the Mortgage Loan, the Debtors' initial plan stated as follows:

> First Choice Credit Union (Account Number [redacted]): Debtors will pay claim directly at $3,000.00 per month. This amount represents a modified payment under HAMP toward the first and only mortgage on Debtors' primary residence. In the event that the creditor denies the Debtors (sic) HAMP modification by filing a written notice of denial on the docket in this case, debtors shall modify their plan within 30 days of the date such notice is filed to include either a surrender of the property, or, to cure through the plan.

2

The provision in the Debtors' initial plan addressing the Mortgage Loan is consistent with current practice among chapter 13 practitioners in this district. It permits First Choice to consider a pending request for loan modification under a federal program and, if the modification request is not approved, provides the Debtors an opportunity to amend the plan in a manner consistent with the requirements of chapter 13. In the meantime, the Debtors agreed to pay a monthly amount to First Choice consistent with an informal arrangement that has become common practice in this district (but is not specifically sanctioned by the Court).

On May 18, 2011, the Clerk of this Court issued a notice of the meeting of creditors pursuant to section[1] 341 which notice was provided to all creditors including First Choice. ECF Nos. 15 and 16. Consistent with Fed. R. Bankr. P. 3002(c), the notice informed creditors of the bar date for non-governmental entities to file unsecured claims in this case, which was September 26, 2011.

On May 23, 2011, First Choice filed Claim No. 4-1. First Choice stated a secured claim in the amount of $514,533.37, secured by a mortgage on the Property. The proof of claim did not indicate any unsecured claim, nor did it indicate any intention of First Choice to amend or supplement its claim to include an unsecured deficiency claim at a later time. First Choice attached copies of the relevant note and mortgage to its proof of claim. Claim No. 4-1 was timely filed.

On June 6, 2011 and June 21, 2011, First Choice filed an objection and an amended objection to the Debtors' initial chapter 13 plan. ECF Nos. 18 and 20. In each case First Choice challenged the Debtors' initial chapter 13 plan as un-confirmable as a result of the

---

[1] Unless otherwise indicated, the terms "section" and "sections" used in this Order refer to sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

Debtors' failure to provide sufficient payments under section 1325(a) to First Choice on account of its secured claim.

On August 11, 2011, the Debtors filed their *First Amended Plan*. ECF No. 29. Among other changes, the Debtors' First Amended Plan provided that the Debtors would surrender the Property to First Choice. The First Amended Plan provided for no additional payment or distribution to First Choice on account of the Mortgage Loan.

On August 22, 2011, First Choice filed a motion for relief from the automatic stay, seeking to enforce its mortgage lien on the Property. ECF No. 39. First Choice's motion for relief from stay was set for hearing on September 9, 2011. ECF No. 43. The Court granted First Choice's motion for relief from stay by order entered September 26, 2011, providing First Choice with the ability to obtain *in rem* relief including possession of its collateral. ECF No. 55. The order granting First Choice's motion for relief from stay does not address the possibility of a deficiency claim and, indeed, specifically prohibits First Choice from seeking an *in personam* judgment against the Debtors.

On November 15, 2011, the Debtors filed their *Second Amended Plan* [ECF No. 65] and on November 17, 2011 the Debtors filed their *Third Amended Plan* [ECF No. 66]. The Debtors' Second and Third Amended Plans addressed First Choice's Mortgage Loan in the same manner as their First Amended Plan. The Debtors stated their intent to surrender the Property to First Choice but provided no other distribution on account of the Mortgage Loan claim. The Third Amended Plan effectively treated the Mortgage Loan claim as fully secured, consistent with First Choice's Claim No. 4-1.

The Debtors' confirmation hearing was continued several times. Counsel for First Choice received electronic notification of each continued hearing and of each amended plan filed by the Debtors. The written confirmation objections previously filed by First Choice were moot as the Third Amended Plan did not provide for a stream of payments to First

4

Choice on account of its Mortgage Loan. First Choice did not lodge an independent objection to confirmation of the Debtors' Third Amended Plan. The Court confirmed the Debtors' Third Amended Plan by order entered on December 7, 2011. ECF No. 68. The order confirming the Debtors' Third Amended Plan was not stayed or appealed and became final in late December, 2011.

About two months after the confirmation order became final, on February 13, 2012, First Choice filed a so-called amended proof of claim designated Claim No. 4-2. For the first time First Choice presented part of its claim, $144,533.37, as an unsecured claim against the estate. As before, First Choice attached copies of the relevant note and mortgage to Claim No. 4-2.

On July 6, 2012, the Trustee filed her Objection to Claim No. 4-2. The Trustee argues that Claim No. 4-2 constitutes an attempt to change the status of First Choice's claim from fully secured to partly unsecured and thus amounts to a new proof of claim rather than an amendment. The Trustee argues that this new claim is not timely as it was filed after the bar date.

First Choice filed a response and an amended response to the Trustee's Objection. ECF Nos. 78 and 82. First Choice states that after the Debtors amended their plan to provide that the Property would be surrendered to First Choice, First Choice obtained possession of the Property but was unable to sell it. First Choice states that it estimated its unsecured deficiency claim and that Claim No. 4-2 represents that estimate. First Choice argues that Claim No. 4-2 represents a permissible amendment to Claim No. 4-1 because its original claim provided notice to the Court of the existence, nature, and amount of the entire claim and that it was First Choice's intent to hold the estate liable. First Choice argues that its amended claim relates back to its timely-filed original claim because First Choice's right to a deficiency arises from the same transaction and underlying debt

5

reflected in its original proof of claim. First Choice states that "the Debtors, the Trustee, and all other parties in the case had sufficient reason to know from the original timely-filed proof of claim that the Creditor intended to pursue its claim under the note." ECF No. 82, pp. 2-3.

In addition to its response and amended response, apparently at the suggestion of the Trustee, First Choice filed the Motion, seeking to obtain an order approving Claim No. 4-2 as a late filed claim. The Motion adds nothing to the Court's analysis here. Indeed, in the Motion First Choice cites Fed. R. Bankr. P. 3003(c)(3) and 9006(b)(1), which are not applicable in this chapter 13 case. For this reason, the Motion will be denied.

In a chapter 13 case, Fed. R. Bankr. P. 3002(a) requires that an unsecured creditor file a proof of claim in order for the creditor's claim to be allowed and paid through the chapter 13 plan.[2] An unsecured claim of a creditor with notice of a chapter 13 case who fails to file a proof of claim is deemed disallowed under section 502(b)(9), is not entitled to any distribution under the plan pursuant to section 1325, and is subject to discharge under section 1328(a). Thus, failure to timely file an unsecured proof of claim is fatal to a creditor receiving anything on account of such claim in a chapter 13 case. If the debtor completes all of his or her plan payments, such an unfiled unsecured claim is discharged and the creditor may not recover on it. On the other hand, a creditor holding a claim secured by assets of a chapter 13 debtor need take no action to protect its interest in the collateral. *Folendore v. United States Small Bus. Admin. (In re Folendore)*, 862 F.2d 1537, 1539 (11th Cir. 1989); *see also* Fed. R. Bankr. P. 3002(a). A secured creditor's lien rights are preserved in spite of the discharge of the debtor's personal liability on the underlying claim.

---

[2] This is in contrast to chapter 9 and 11 cases where a claim scheduled by the debtor and not indicated as disputed, contingent, or unliquidated is deemed allowed for purposes of voting and distribution. Fed. R. Bankr. P. 3003(c)(2).

6

In a chapter 11 or chapter 9 case, a creditor that fails to timely file a claim might argue that such failure was as a result of its excusable neglect. Fed. R. Bankr. P. 9006(b)(1); *Pioneer Inv. Serv. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 388 (1993). A creditor that fails to timely file an unsecured claim in a chapter 13, chapter 12, or chapter 7 case may not rely on such an argument. Fed. R. Bankr. P. 9006(b)(3) explicitly provides that the deadline for filing proofs of claim in a chapter 13 case may only be extended to the extent and under the conditions provided in Fed. R. Bankr. P. 3002(c). The exceptions listed in Rule 3002(c) are narrowly stated and none of them apply in this case.

It is possible for a creditor to amend a timely filed claim, even after the bar date. "[I]n a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *United States v. Int'l Horizons, Inc. (In re Int'l Horizons, Inc.)*, 751 F.2d 1213, 1216 (11th Cir. 1985). "Still, the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of an amendment." *In re Int'l Horizons, Inc.*, 751 F.2d at 1216; *see also Highlands Ins. Co., Inc. v. Alliance Operating Corp. (In re Alliance Operating Corp.)*, 60 F.3d 1174, 1175 (5th Cir. 1995) ("Bar dates . . . are not to be vitiated by amendments . . . . Amendments to proofs of claim that change the nature of the claim . . . set forth a new claim.") (internal citation omitted)). In general, "amendment is permitted only where the original claim provided notice to the court of the existence, nature, and amount of the claim and that it was the creditors' intent to hold the estate liable." *In re Int'l Horizons, Inc.*, 751 F.2d at 1217.

Thus, the first question for the Court in connection with the Trustee's Objection is whether Claim No. 4-2 is a permissible amendment to Claim No. 4-1. Claim No. 4-1 was

timely. If Claim No. 4-2 is not an appropriate amendment to Claim No. 4-1, Claim No. 4-2 is not timely and must be stricken.

Under the test set out in *In re International Horizons*, First Choice's Claim No. 4-2 does not constitute an amendment to Claim No. 4-1. Claim No. 4-2 does not cure a defect in the claim originally presented by First Choice, a wholly secured claim. Instead, it presents for the first time an unsecured claim against the estate. Nor does Claim No. 4-2 describe the claim with greater particularity or present a new theory of recovery. Indeed, it attaches the same documents that form the basis for Claim No. 4-1. First Choice's original claim did not provide notice to the Court of the existence, nature, or amount of any unsecured claim, nor did it exhibit to the Court any intent on the part of First Choice to hold the estate liable for an unsecured claim. Claim 4-1 presented only a secured claim. By not presenting a timely unsecured claim, in spite of ample notice of this case and every document filed in it, First Choice elected not to participate as an unsecured creditor in any distribution from the estate.

To permit a re-classification of part of First Choice's claim as an unsecured claim would have a significant impact in this case. The filing of Claim No. 4-1 as a fully secured claim has specific implications. While a secured creditor need not file a proof of claim to preserve its rights in collateral, doing so constitutes an admission of the amount of its secured claim for purposes of treatment under section 1325(a)(5). Assuming a debtor and creditor have not reached agreement on the treatment of a secured claim, the debtor has the option of proposing deferred cash payments during the term of the plan under section 1325(a)(5)(B) or of surrendering the collateral to the creditor under section 1325(a)(5)(C). The Debtors selected the latter, including in their confirmed Third Amended Plan a provision that they would surrender the Property to First Choice. The Debtors' Third Amended Plan was confirmed based in part on an analysis of the timely filed, allowed

unsecured claims and appropriately did not take into account any potential deficiency claim that First Choice failed to file. Section 1325(a)(4) requires that the present value of distributions under the plan to unsecured creditors equal at least the amount they would receive in a chapter 7 liquidation. To apply this provision, the Court considers the value of all of a debtor's non-exempt assets that may be distributed in a chapter 7 case in light of all allowed claims. If a debtor has non-exempt assets of a value that would permit the payment in full of unsecured claims in chapter 7, section 1325(a)(4) could require the debtor to pay more than he or she is capable of paying on a monthly basis from regular income. The late addition of a large unsecured claim could result in a plan becoming infeasible and thus retroactively un-confirmable under section 1325(a)(6). The chapter 13 trustee and the Debtors agree that such would be the result here if First Choice's tardy, unsecured claim is allowed.

      Allowing a late-filed unsecured claim is detrimental to other unsecured creditors. In nearly all chapter 13 plans, the trustee receives a fixed monthly amount for distribution to the holders of allowed unsecured claims. In most cases unsecured claims will not be paid in full, and so the larger the universe of allowed unsecured claims, the smaller the distribution to each unsecured creditor. Section 1325(b)(1) empowers the holders of allowed unsecured claims to object to confirmation, thus forcing the debtor to pay a specified minimum amount on account of allowed unsecured claims. Holders of allowed unsecured claims are entitled to object to confirmation on other grounds, such as feasibility under section 1325(a)(6). But unsecured creditors are not compelled to object to confirmation. They necessarily decide whether to object to confirmation of a chapter 13 plan based in part on the aggregate amount of allowed unsecured claims in light of the debtor's proposed plan payments. If a creditor can present an unsecured claim after the bar date, potentially adding a significant claim to the mix and thus reducing the *pro rata* distribution on account

of unsecured claims, this places other unsecured creditors at a distinct disadvantage in responding to the debtor's proposed plan. Unless they are allowed to rely on the universe of timely filed claims, unsecured creditors cannot determine whether to oppose confirmation of the plan.

Presentation of an unsecured claim in a chapter 13 case, including a deficiency claim on a secured obligation, is materially different from presentation of a wholly secured claim. The filing of an unsecured deficiency claim for the first time after the bar date cannot be an amendment to a timely filed, wholly secured claim; it is a completely new claim. *In re Matthews*, 313 B.R. 489, 494 (Bankr. M.D. Fla. 2004) ("the attempt to change the status of a claim from secured to unsecured is not considered an amendment, in the traditional sense, that is to be freely allowed").

In determining whether to allow a late filed claim as an amendment, some courts have considered certain equitable factors. *See In re Matthews*, 313 B.R. at 494 (and cases cited therein). In light of the specific provisions of Fed. R. Bankr. P. 3002(c), the fact that excusable neglect does not apply in this case pursuant to Fed. R. Bankr. P. 9006(b)(3), and the fact that confirmation of a chapter 13 plan bars the presentation of an amended claim inconsistent with that plan (see below), the Court does not believe such equitable factors are appropriately applied to late-filed claims in chapter 13 cases.[3]

---

[3] The Debtors cite *In re International Horizons, Inc.*, 751 F.2d at 1216, which in turn cites *In re Miss Glamour Coat Co. Inc.*, 80-2 U.S.T.C. ¶ 9737, 1980 WL 1668 (S.D.N.Y. Oct. 8, 1980), in support of the application of certain equitable factors here. The cited text in *In re International Horizons, Inc.* is a recitation of the analysis undertaken by the bankruptcy court which was not explicitly adopted by the 11th Circuit in its decision. The 11th Circuit goes on to apply the test outlined above in this Order to determine whether a post-bar date claim was a proper amendment to a timely claim, holding that it was not. It is important to note that *In re International Horizons, Inc.* addressed a chapter 11 case, where the court has more discretion to permit late-filed claims. *See* Fed. R. Bankr. P. 9006(b)(1); *Pioneer Inv. Serv. Co.*, 507 U.S. 380 at 389 n.4. Even if such equitable factors apply here, First Choice would obtain no benefit from them. The facts presented in this case are essentially identical to those presented to the court in *In re Matthews*, and the Court adopts that court's analysis in applying the *Miss Glamour Coat Co., Inc.* equitable factors. 313 B.R. at 495.

The Trustee stressed that First Choice's timely filed Claim No. 4-1 did not include a statement that First Choice reserved the right to amend its claim to add an unsecured deficiency claim at a later time. The Trustee argued that this, alone, was fatal to Claim No. 4-2. There is case law suggesting that such a reservation of rights is essential to enable the later amendment of a secured claim to add a deficiency claim. *See In re Winters*, 380 B.R. 855, 860 (Bankr. M.D. Fla. 2007). But there is no basis in the Bankruptcy Code or the Bankruptcy Rules to support this position. Fed. R. Bankr. P. 3002(c) and 9006(b)(3) make it clear that the bar date for presentation of claims in chapter 13 is in most cases a bright line. A claim may be filed after the bar date only if it falls into one of the narrow exceptions presented in Fed. R. Bankr. P. 3002(c) or is an amendment of a previously filed claim under the narrow test addressed above. A statement in a proof of claim that the creditor may amend its claim at a later time, whether to add a deficiency claim or otherwise, does not extend the deadline set in Fed. R. Bankr. P. 3002(c) or cause an otherwise impermissible addition or change to be deemed a proper amendment.[4]

The purpose of the bankruptcy claims process is to present to the court, the debtor, the trustee, and creditors, the nature and amount of each claim. The debtor and creditors appropriately rely on timely filed claims in formulating a plan and reacting to it. The court relies on timely filed claims to confirm the plan. Even in the limited circumstances where a creditor may present a claim other than by filing a timely formal proof of claim, the creditor must do so in an unequivocal fashion, exhibiting in a filed paper a present intent to hold the estate liable. *In re Int'l Horizons, Inc.*, 751 F.2d at 1217. It is not enough that the debtor

---

[4] At least one court has suggested that it would permit the filing—after the bar date but prior to chapter 13 plan confirmation—of a deficiency claim in connection with a timely filed secured claim. *In re Matthews*, 313 B.R. at 495. In light of the provisions of Fed. R. Bankr. P. 3002(c) and 9006(b)(3), a claim presented after the bar date is untimely, and thus disallowed under section 502(a)(9), whether filed prior to or after confirmation. It is possible that a claim presented after the bar date but prior to confirmation could be subject to allowance under section 502(j). Because First Choice did not file Claim No. 4-2 until after confirmation, the Court need not address this issue.

might know of a potential claim. *Id.* It is not enough to state in a timely filed claim that the creditor might present a different claim later.

Under section 502(a), a filed claim is deemed allowed unless objected to. Allowance of a claim establishes its priority as well as its amount. A party in interest may interpose an objection based on the amount, the priority, or even the existence of liability supporting the claim. A reservation of rights to present a claim is not itself a claim. It does not constitute *prima facie* evidence of the validity and amount of a claim under Fed. R. Bankr. P. 3001(f) because it states no amount. It exhibits no present intent to hold the estate liable. It states only that the creditor might want to hold the estate liable later. There is no claim to object to. To hold that a reservation of the right to amend a timely filed claim is sufficient to permit the filing of a post-bar date claim would put the debtor and other parties in interest in the position of objecting to such proofs of claim and showing, in spite of the fact that no claim is actually presented, that it should not be allowed. Such a procedure places on its head the entire claims allowance process.

If a secured creditor wishes to preserve its unsecured deficiency claim for treatment in a chapter 13 case, it must formally file an unsecured claim in a timely manner. If the bar date falls after the date set for the confirmation hearing, and a secured creditor wishes to present a deficiency claim not already provided for in the plan, the secured creditor should seek a continuance of the confirmation hearing to a date after the bar date. If the value of the creditor's collateral is at issue, the creditor may file a motion to value its collateral under Fed. R. Bankr. P. 3012 along with a timely proof of claim that reflects the creditor's intention to hold the estate liable for any deficiency claim resulting from such valuation. In the alternative, a secured creditor may file a timely unsecured deficiency claim in an unliquidated amount and move for a continuance of the confirmation hearing to permit the court to liquidate the unsecured claim prior to confirmation. Unlike a

reservation of the right to amend a claim in the absence of these measures, each of these actions exhibits the creditor's present intention to hold the estate liable for an unsecured claim and relies on procedures in the Bankruptcy Code and Bankruptcy Rules to ascertain the amount of that claim. First Choice did none of these things.

Perhaps most importantly, under section 1327 the "provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." *Universal Am. Mortg. Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 829-30 (11th Cir. 2003) (noting that section 1327 has broader impact than traditional claim preclusion) (internal quotation and citation omitted). Confirmation of the Debtors' Third Amended Plan is *res judicata* with regard to each matter addressed therein. Even if Claim No. 4-2 could be considered a proper amendment to Claim No. 4-1, it would have no impact on confirmation of the Debtors' Third Amended Plan or the eventual entry of a discharge order in this case. In the section of the Third Amended Plan addressing payments to unsecured creditors, the plan states: "Pro rata dividend will be calculated by the Trustee upon review of filed claims after bar date." This language is verbatim from the Court's Local Form 31 (Chapter 13 Plan). The intent of this language is to inform parties in interest that the payments made by a debtor on account of unsecured claims will be distributed by the chapter 13 trustee *pro rata* to those creditors who filed unsecured claims by the bar date and whose claims were allowed. This is consistent with sections 1325(a)(4) and 1325(b)(1) which provide for distributions only to holders of allowed unsecured claims. At the time this Court confirmed the Third Amended Plan, First Choice had filed no timely unsecured claim and thus did not have an allowed unsecured claim. The Third Amended Plan treated First Choice as fully secured, consistent with Claim No. 4-1, and did not provide for any payment to First Choice on account of its unstated deficiency claim. The

Third Amended Plan was confirmed, the confirmation order was not stayed or appealed, and the order became final about two months prior to the filing of Claim No. 4-2. The power to revoke the confirmation order under section 1330 expired long ago and no such motion was filed (nor is there even a suggestion that the confirmation order was procured by fraud as required under section 1330). Thus, First Choice is bound by the terms of the Third Amended Plan. First Choice is not entitled to any distribution in this case on account of its unsecured deficiency claim.

Although not cited by any party, the Court notes that section 502(j) also provides no assistance to First Choice in this case. Because Claim No. 4-2 was not timely, it is deemed disallowed under section 502(a)(9). Under section 502(j), the Court may reconsider the allowance or disallowance of a claim for cause and a "reconsidered claim may be allowed or disallowed according to the equities of the case." To permit allowance of an unsecured deficiency claim in this case would result in the need for the Debtors to modify their confirmed plan under section 1329. The Trustee and counsel for the Debtors argued that, in light of the requirements of sections 1325(a)(4) and 1325(a)(6), the Debtors would be unable to propose a modification that would satisfy the confirmation requirements and this case would be dismissed. Indeed, the Trustee went so far as to make an *ore tenus* request for dismissal of this case as an alternative to disallowance of Claim No. 4-2. Dismissal of this case would only reward First Choice for its failure to protect its own rights consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules, and would prejudice those creditors who filed timely unsecured claims and expect to receive the full amount payable under the Debtors' confirmed Third Amended Plan. Thus, even if there was cause for reconsideration of First Choice's claim, which has not been shown, and even if it is appropriate to apply section 502(j) in this context, which is questionable, the equities weigh against allowance of Claim No. 4-2.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The Motion [ECF No. 84] is DENIED.

2. The Objection [ECF No. 76] is SUSTAINED. Claim No. 4-2 filed by First Choice Credit Union is STRICKEN.

3. The Trustee's *ore tenus* motion to dismiss this case is DENIED.

###

Copies furnished to:

Robin R. Weiner, Esq.

*Robin R. Weiner, Esq. is directed to serve a copy of this Order upon all appropriate parties and to file a certificate of service with the Court.*